Good morning, Your Honors, and may it please the Court. Mavish Shokat on behalf of Appellant Dewey Austin Barnett, II. I would like to reserve three minutes for rebuttal. In a single sentence, the District Court categorically barred recovering damages against Jefferson County and Brenda Short. That was error as to both defendants. As to the county, RLUIPA's plain text... You said in a single sentence. You mean the one that cited our unpublished opinion from 2020, as well as the case you said was the only thing the District Court cited? Yes, Your Honor. That was an almost dishonest sentence in your brief, as you admitted six pages later. I say you as the brief writer, and I'm sure that was a collective exercise. Let's focus on that unpublished opinion. That's what you have to fight as the law of the circuit. Your Honor, first I'd like to apologize for that... I understand. Enough said. I'd like to perhaps, if possible, make one point as to the counties, which is that RLUIPA's plain text authorizes money damages against counties. We know that because of the Supreme Court's longstanding presumption from Franklin, which says, absent indication to the contrary, that appropriate relief includes money damages. Every circuit to address this question does agree that money damages are available as to municipalities. If there are no questions regarding the counties, I may turn to the individual capacity claim. To begin there, we also believe the same point is true, that RLUIPA's plain text authorizes money damages against Brenda Short. Again, that is relying on this longstanding presumption from Franklin, and also on the Supreme Court's decision from Tanzine, which also interpreted the words appropriate relief to include money damages. They said clearly on page 45 that appropriate relief does include money damages in this case. But there are significant differences between the two statutes, even though the language itself is almost verbatim the source of congressional authority. Isn't that one of the key things you'll have to address in terms of whether the spending clause can extend to this third-party individual, Brenda Short, which is conceptually different than the county? Yes, Your Honor. That's correct. I'd like to address that in two parts. To begin, as Judge Oldham put the point in his Landor Dissental, we are talking about And no part of Tanzine's analysis actually turned on the fact that it was passed under the 14th Amendment. But it probably wouldn't, would it? I mean, it wasn't dealing with RLUIPA there. So I think that you have to hit head-on here the fact that the spending clause is a more limited authority in some ways. And I don't know, are there any cases that extend this kind of damages to an individual third-party under the spending clause authority of Congress? Is there anything out there that has allowed that? So, Your Honor, to address your question, we don't believe that there is any problem with, there's no constitutional problem with Congress's chosen remedy. But the question is, are there cases out there? Your Honor, so we would point the Court to Dole and Sabri. And we also believe there's examples of statutes in the United States Code. And so if I could turn first to Dole. Wait, wait. I didn't catch those citations. I apologize, Your Honor. So I wanted to first go through Dole, which is the canonical Supreme Court case that establishes the limits on spending clause legislation. And so the first place to begin, if the Court has a question about the constitutionality of RLUIPA's remedial regime, would be to apply Dole. And this Court knows and has done that before in the Van Wye opinion. And so under Dole, there is no problem because this remedy satisfies all of the Dole factors. It's in pursuit of a general welfare. It unambiguously conditions receipt of funds. It's related to federal interest. It doesn't violate the constitution. And that it's not coercive. So the only factor at issue in this case is factor two, which is asking whether, you know, RLUIPA was clear. But Sabri is another case that we would point, Your Honor, to explain that that's a case in which the Supreme Court upheld Congress's power under the spending clause and the necessary and proper clause to regulate non-funding recipients. But that case was to protect the federal expenditure, right, not another goal of Congress. That was, hey, we've got this money here that we're sending out, and we're going to protect that money. Your Honor, we don't believe that Sabri was so limited. And, you know, in fact, if we look to the different paragraphs in the opinion, you know, on page 606 and 607, the Supreme Court actually said that this is not literally a funds-tracing case. And so the opinion is not cabined to only addressing economic harm. Sabri sets forth a number of broader propositions that apply directly in this case. For example, on page, it establishes the fact that basically Congress is allowed to protect its spending from bad actors and to regulate people like Brenda Short who violate religious liberties instead of protecting them. Page 608, Sabri said that Congress has the power to keep a watchful eye on expenditures, and the reliability of those who use public money is bound up with Congress's authority to spend it in the first place. And the reason, and Sabri gives us important reasons for why this should extend to the spending clause statute at issue in Sabri, and the same applies to Equal Force here. And that's because Congress does not have to accept the risk of getting poor performance for its money. It's on page 605 of Sabri. And Sabri also includes an additional parallel which we think is really relevant to this case, and that's looking to the legislative history. And so on page 607 of Sabri, the Supreme Court noted that this is a particularly appropriate use of the Necessary and Proper Clause because the former federal laws were found to be inadequate to protect the federal interest at issue. There, it was bribery. And then this was Congress's second attempt to enact broad protections for the federal government. And so I believe- Does your position require us to sort of push back on the Supreme Court's description of their use of the contract analogy with spending clause? In other words, so you've got the county, the Jefferson County, but then to apply it to Brenda Short. So does your position cause us-would that force us to sort of modify that or sort of somehow cast an exception to it? No, not at all, Your Honor. The Supreme Court's analogy to contracts is a limited analogy. And if we look at the way the Court uses that, it's really to give us a different way of saying that Congress must speak clearly, that the funding recipient needs to be on notice for what they are agreeing to. And so that is the purpose of the contract analogy. Sossaman's Supreme Court actually-it's page 209. The Supreme Court has actually clarified that spending clause suits are not literal suits in contract. And so because that is the limited way in which the Court has applied the analogy and that it's fully satisfied in this case, we think that is in line with how the Court has applied that. And also, Your Honor, a final point on this question is that there is no Supreme Court case that actually says, as defendants would like you to agree to, and which would in fact make, we think, a new rule that direct recipients-that there is a direct recipient rule under the spending clause. There is no such rule. There is no single Supreme Court case. What we do have is Dole and Saugery that tell us the limits of the spending clause. And, Your Honor, just to- I'd like to go somewhere else. That is, your brief pays no attention to the order on review. It was not a dismissal with prejudice, was it? It was a dismissal without prejudice in the wake of repeated pleading failures. And your brief treats this like the extinguishment of a right. But, of course, that's not true at all. So why isn't the fact that it's a dismissal without prejudice crucial to whether it's reversible in the way you say? Well, Your Honor, that is true. I think that- All you had to do was now the new lawyers come in who know so much more just come in and go to the jail and interview them and do a complaint that solves the problems. Your Honor- So- Easy. Answer. And I know this district judge, who's pretty much maligned in your briefs, but happens to have been a former law clerk of the Associate Justice assigned to the Eighth Circuit. No question this district judge would have paid careful attention to an upgraded, if you will, revised complaint. Your Honor, I think the issue there is that the district court didn't deny the relief on the basis of a pleading failure. So that it was a bar- the district court said- It wasn't a denial of relief. It was a do it over, do it right. To an initially pro se claimant who didn't do it right repeatedly. We've upheld dismissals without prejudice right and left in these situations. And your brief doesn't even touch on this. Your Honor, Mr. Barnett- Mr. Barnett amending his pleading wouldn't change the fact that the district court barred this relief entirely under RLUIPA. So it said that RLUIPA bars damages. It didn't say that it was dismissing because- That's completely speculative. And even if the district court had considered Scott v. Lewis binding on that issue, that doesn't solve the rest of the case. I understand, your Honor. I think that our request is that Mr. Barnett be allowed leave to amend and that this court find that damages are available under RLUIPA. If there are no further questions, I would like to reserve my- What if we consider Scott v. Lewis our binding precedent? Now, where are you? If that is true, your Honor, then we still hold the same arguments that Tanzine is a Supreme Court decision which has interpreted the same words appropriately to- Didn't Scott reject that explicitly? Your Honor, that opinion was- I don't believe that was considered in full detail. But I think that Franklin, in addition, gives us this presumption. But the point that we're trying to make, your Honor, is that in addition, there is no constitutional problem with this remedy, as Judge Oldham noted in his Landau dissent. So you're right. We can't find Scott v. Lewis binding. It's simply impossible. The Constitution prohibits us from following our prior case. No, your Honor. Just that if- That's what I'm hearing. If this court does find it binding, we would- Or persuasive. Or persuasive. Our position is that the Supreme Court precedent from Tanzine, from Sabri, and also from Talevsky, which, again, I see, your Honor, my time is running out, but I'll just finish this one point. In Talevsky, the Supreme Court actually explicitly rejected part of defendant's point, which is that there is no spending clause exceptionalism. And that's an opinion from 2023, which postdates Scott v. Lewis. And it actually rejected the idea that we should- What case was that? Your Honor, that's Talevsky, the Supreme Court case. And it's on page 178 of that opinion in which it rejects this kind of interpretation. I see that my time has expired. Thank you. Mr. Hill. Good morning. May it please the Court, Counsel. My name is Blake Hill. I represent the Appalachians, Jefferson County, Missouri, and Brenda Shore. You're going to have to speak up for me. You can raise it on the side of the podium there. You can push and raise it if you'd like. Thank you, Your Honor. Thank you. Your Honor, may it please the Court. As Judge Loken, I believe you pointed out that there were some failures in the plaintiff's pleading that I believe are dispositive of this case without having to resort to interpreting our LUPA in the way that the briefing has done and that this Court could affirm the dismissal. Counsel, I'm sorry. I can't hear you. I can't hear you. I'm sorry. The Court can affirm the dismissal of the District Court based on pleading failures alone of the plaintiff, including, for example, that the plaintiff did not properly plead facts invoking our LUPA, including any citation to the statute, or, for example, that either of the defendants were recipients of federal funding. I'm sorry, Counsel. Are you saying it didn't include a citation to the statute? Is that what you said? That's one of the things, yes, Your Honor. He's not supposed to cite laws. I thought you said facts. Facts including that either of the defendants were recipients of federal funding. I'm sorry. I can't hear you, Counsel. That either statute, failure to state a statute. The plaintiff, in his complaint, in his admitted complaint, did not invoke the statute either by identifying the statute or by alleging any of the facts that would invoke the Court's jurisdiction under that statute, including, for example, that any of the defendants were recipients of federal funding, which in my briefing I cite to 504 of the Rehabilitation Act as an example where the Court has required. Wouldn't that be something that would be subject to prove at some later stage in the case? Certainly it would be subject to prove at a later stage in the case. You have to put that in a pro se complaint. Is that something that you think the omission of would be fatal to its validity? I think that there is precedent involving, for example, 504 of the Rehabilitation Act where dismissals have been upheld for failure to allege that the defendants were recipients of federal funding and that that would be- Was that a pro se case? You know, Your Honor, I don't know of any reported decisions in that off the top of my head, but I am aware in my own practice of district court dismissals of pro ses on this basis. Thank you. Your Honor, there's also a few other factual matters that the District Court found that plaintiffs did not allege more than a de minimis encroachment upon his religious freedom, other factual matters. I defer to the briefing on that, and I'll dispense with that and move on to the Arlupra interpretation issue if that pleases the Court. Now, plaintiffs argue that the phrase appropriate relief requires this Court to take the Tanzine versus Tanvir holding of the Supreme Court and extend it to Arlupra. As this Court has already noted, those are different statutes. They emanate from different congressional power, RFRA coming from the Enforcement Clause and Arlupra coming from the Spending Clause, a much more narrow power of Congress. At the outset of its analysis, the Supreme Court in Tanzan started with the ordinary meaning of the word appropriate as it existed at the time of the passage of RFRA and determined that it was inherently context dependent and open-ended and therefore resorted to analogizing the law with other legislation, including, for example, 1983, thereby concluding that there was this individual right. The plaintiffs encourage the analogy of 1983 in this case and the contextual resort to viewing legislative history and other legislation without any context in the Spending Clause. Does the record reflect whether the statute of limitations had run when the amended complaint was dismissed without prejudice? Well, Your Honor, factually, plaintiff alleges that on March 15th, 2021, he was denied a Bible when he was placed on. Don't you understand what the statute of limitations question is? Don't you understand the significance of a dismissal without prejudice? Your brief doesn't seem to. Well, Your Honor, I think if what you're driving at is the question that you directed to prior to counsel. Both briefs ignored what, to me, is a critical aspect of the appeal. Your Honor, in preparing our briefs, we did, in fact, research the issue. My conclusion was that I believe that there is precedent that when a dismissal with prejudice purports to finally dispose of a matter that it's not less appealable.  Without prejudice, I misspoke, Your Honor. And you were going to say what? A dismissal without prejudice always permits another case on the same subject. It has no preclusive effect. Well, Your Honor, if that's the case, then certainly this appeal should. You don't think that's right? You don't understand that law? I think that you are correct, Your Honor. So the next day, they could have come in with new counsel, more sophisticated counsel, and an amended complaint based on what the pro se person could say of the facts. I don't disagree with that at all. Unless the statute of limitations had run. Understood, Your Honor. And had it? To my understanding, no. Why isn't that the end of the appeal? Well, Your Honor, I think certainly. They say he got wiped out of his rights. There's nothing left of his rights. Wrong. I certainly understand that, Your Honor. And if that is in fact the binding law, then I think that the score has no choice but to dismiss the appeal. Your Honor, if Mr. Barnett wants to file a corrected complaint with more sophisticated counsel, which he obviously has now, then I think he We don't grant leave to that. We just handle the appeal that's before us. Understood. Well, Your Honor, I think at the moment that that leaves the court with nothing more than the ability to affirm a dismissal without prejudice, which then takes a trifecta. No, it leaves us a lot of work if it's even a plausible idea, because none of the lawyers addressed it. I have no doubt the district court, as sound as she normally is, knew exactly the significance of that. Your Honor, that being the case, then we would ask this court to uphold the dismissal without prejudice. I'm just one voice here. Well, I would say this, Your Honor. To the extent that the court believes itself to be bound to the principle that this dismissal without prejudice is effectively providing no real grounds for appeal here and that the proper resolution here is for No, I think you should continue with the arguments that were briefed. Okay. I was just seeing whether you had anything to add to my thought, which I have not researched and which requires research that none of the lawyers have done. Thanks. Understood, Your Honor. To that point, I would just respectfully submit that to the extent that this appeal is proper because the dismissal, notwithstanding that it was without prejudice, precluded a further filing because of the indication that a further filing would be moot or futile, then we're properly before this court. And the court's reasoning as set forth in Van Wyne, for instance, is consistent with the circuits that have held that LUPA does not provide an individual cause of action for damages. Plaintiff has argued that that case and others like it are limited by their application of the doctrine of sovereign immunity, or the application of sovereign immunity to those cases. And this case not involving a sovereign doesn't require the same outcome. I think what I would point out that has been pointed out in the Supreme Court, and specifically in the Sixth Circuit and Hyde case, is that this imperative of clarity that is discussed in Van Wyne and other cases addressing sovereign immunity applies with equal force to all spending clause legislation. So the question of whether the defendant is a sovereign, as is addressed in this circuit's precedent, I would argue is incidental. As the Sixth Circuit stated in Hyde v. Thompson, that clarity is demanded whenever Congress legislates through the spending power. So are you distinguishing then between the county and the individual, Brenda Short, in your argument there? No, no, no, Your Honor. To the extent that plaintiff seeks to distinguish the Van Wyne case, which involves state actors who have sovereign immunity, versus this case where it involves a county who doesn't have the Eleventh Amendment immunity, I would say that the sovereign immunity analysis is merely incidental, and that the clarity imperative extends beyond mere sovereign immunity analysis to all spending clause legislation. Therefore, for example, Van Wyne is not inconsistent with the result that we are championing here. I know I'm running out of time, Your Honor, so I want to skip ahead and address the Sabry case that the plaintiff has raised here, only to reiterate a point that I think is well understood by the Court, that it involved a criminal statute. It involved not only spending clause legislation in the form of this criminal statute, but also an exercise of the necessary and proper clause in order to protect the object of the federal power. Where the plaintiff has identified the government's interest in enhancing and protecting religious freedoms, I think the plaintiff has conflated a congressional interest in influencing policy with Congress undertaking to protect the object of its spending power, and I think that's borne out in the Sabry case. Addressing the Dole matter also, plaintiffs allege and argue that Dole stands for this proposition that a non-recipient of funding may nevertheless be impacted by the passage of spending clause legislation. That's very distinguishable that such indirect regulation, obviously, is very distinguishable from what is proposed under ARLUPA. For example, in the Dole case, the federal government tried to incentivize the states to raise the drinking age in order to avoid missing out on a certain percentage of federal highway funding. Obviously, this was Congress trying to incentivize the states, but the ultimate mechanism for regulating this was actually state law. So, as the Court would observe in the Dole case, the plaintiff was actually the state of South Dakota, who challenged that on the basis of all these other factors discussed that are not germane to this appeal, including coercive effect and things of that nature. But the plaintiffs in that case were not 19-year-old citizens of South Dakota who were seeking relief from a federal regulation. Well, in accepting the contract, wouldn't there be some anticipation that the employees of the county would be bound by the contractual agreement, if we're going with the contract analogy under the spending clause? Well, in the recent Supreme Court case comings that we've cited from, I believe, 2022, there's a lot of effort by the plaintiff in this appeal to distance or distinguish and downplay the contract analogy. And certainly, a spending clause legislation is not a literal contract, and all of the canons of construction of contracts don't apply to spending clause legislation. But one thing that seems to be consistent throughout, and including in the comings case from the Supreme Court, is taking for granted that the element of partaking in contract assumes, even, that we're dealing with a recipient of federal funding. I think if you look at the comings where I believe it's quoting Sosaman, I believe the court, in fact, added the word recipient in brackets to its quotation, discussing the clarity imperative, because I think that it's taken for granted, all the way up to the Supreme Court, that it is the recipient. So I don't believe there's any reason for there to be anticipation by an employee who is not a direct recipient of federal funding to believe that they are party to this, essentially, contractual type quid pro quo, really. I see that I'm out of time. The dismissal should be affirmed. Thank you. I'll give you a minute for rebuttal. So, Your Honors, I'd like to first. I'd like to first. I'd like to first.  Short people problems. I'd like to first address the county and just emphasize the point that county liability, even under defendant's theory, would be appropriate because Jefferson County was the entity that did receive federal funds. And in addition, I would also like to say that I think that defendants are mistaken and they're wrong about the difference in sovereign immunity, that the standard is different for sovereign. That's really clear in Van Wye, so I won't belabor that point. But also that there are one of two ways that this court could decide this case, that it's constitutional based on the necessary and proper clause, which would not require us to consider the questions of consent. And finally, we would ask this court to allow Mr. Barnett to amend his complaint as counsel conceded that the statutes of limitation hasn't run and that Mr. Barnett should be allowed to do so. Thank you, Your Honors, and thank you. Thank you, counsel. Case has been thoroughly briefed. Challenging issues. Argument's been helpful. We'll take it under advisement.